# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LISA SWEENEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12 C 564 |
| ) | |
| LAWANDA BURRAS and ) | |
| DAVID HARRIS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Lisa Sweeney has sued Lawanda Burras and David Harris, two Chicago State University (CSU) police officers, for false arrest, excessive force, conspiracy, and failure to intervene pursuant to 42 U.S.C. § 1983. Sweeney has also made several claims under Illinois law, including malicious prosecution, intentional infliction of emotional distress (IIED), battery, and assault. Sweeney's claims arise from an incident at CSU's Chicago campus on February 7, 2011, while she was attending a class.

Defendants have moved for summary judgment on all of Sweeney's claims except for the excessive force claim.[1] For the reasons discussed below, the Court denies defendants' motion, except as to Sweeney's conspiracy claim.

## Background

On the evening of February 7, 2011, Sweeney was attending a math class at

---

[1] Defendants originally sought summary judgment on all claims, but in their reply brief they withdrew their motion with respect to the excessive force claim. See Defs.' Reply at 1 n.1.

Harold Washington Hall on CSU's campus in Chicago. She and another student got into a verbal disagreement, and the professor called the CSU police. A dispatcher contacted Harris and Burras and instructed them to report to the professor's classroom.

Upon arriving there, Harris and Burras asked Sweeney to leave the classroom and then escorted her into the hallway. They asked Sweeney for her CSU student identification card. She did not provide identification and instead suggested that they check the professor's class roster to get her identification information.

The parties dispute what happened next. Sweeney alleges that while she was seated on a bench and calling an attorney, Burras and Harris shouted and cursed at her and then grabbed her and threw her to the ground. By contrast, Burras and Harris say that they asked Sweeney to leave the premises and she refused, so they called their supervisor, who instructed them to bring Sweeney in for trespassing. They then took her into custody, an effort that they say Sweeney resisted. Each side denies the other's account of these events.

The parties agree that Burras and Harris arrested Sweeney and that she lost consciousness shortly after they handcuffed her. They then took Sweeney from Harold Washington Hall to a CSU police car, which took her to the CSU police station. Sweeney was held there for several hours before she was transported to the Chicago Police Department's 5th District station on February 8, 2011. Sweeney was charged with disorderly conduct and resisting arrest.

On February 12, 2011, Sweeney sought medical attention for injuries that she allegedly sustained on the night of her arrest. Sweeney claims that she continues to suffer mental and emotional distress as a result of the attack, arrest, and filing of

2

charges against her. She seeks compensatory and punitive damages.

On the day Sweeney went to court on the charges against her, Harris did not arrive on time. As a result, the court "SOL'd" the case, state-court lingo for a dismissal with leave to reinstate. The prosecution did not ask for a continuance and never sought to reinstate the case against Sweeney.

## Discussion

"Summary judgment is appropriate if there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law." *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 805-06 (7th Cir. 2014) (internal quotation marks omitted). A court "tak[es] all facts and reasonable inferences in favor of the nonmoving party." *Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014).

**1.    False arrest**

Burras and Harris contend that they had probable cause to arrest Sweeney for disorderly conduct, resisting arrest, and criminal trespass to state-supported land (CSU is part of the state university system). "Probable cause exists if at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Mucha v. Village of Oak Brook*, 650 F.3d 1053, 1056 (7th Cir. 2011) (internal quotations omitted). "[A]n arrest may be supported by probable cause that the arrestee committed any offense, regardless of which crime was charged or which crime the officer thought had been committed." *Gutierrez v. Kermon*, 722 F.3d 1003, 1012, n. 3 (7th Cir. 2013).

Burras and Harris argue in the alternative that qualified immunity protects them

from Sweeney's false arrest claim. "The probable-cause standard inherently allows room for reasonable mistakes, but qualified immunity affords an added layer of protection by shielding officers from suit for damages if a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Abbott v. Sangamon Cty.*, 705 F.3d 706, 714 (7th Cir. 2013) (citation omitted). "This concept is often called arguable probable cause, and it is sufficient to grant qualified immunity to officers who reasonably but mistakenly believed they had probable cause to arrest." *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013) (internal quotation marks and citation omitted).

The Court begins with defendants' argument regarding trespass. Under Illinois law, a person "commits criminal trespass to State supported land when he or she remains upon the land or in the building after receiving notice from the State or its representative to depart, and who thereby interferes with another person's lawful use or enjoyment of the building or land." 720 ILCS 5/21-5(a). "A person has received notice from the State within the meaning of this subsection if he or she has been notified personally, either orally or in writing . . . ." *Id.*

It is undisputed that defendants asked Sweeney to leave the classroom, and there is evidence that Sweeney voluntarily went with them to the hallway. *See* Pl.'s Ex. C at 44. Defendants say, however, that the professor told Burras (who in turn told Harris) that she did not want Sweeney to return to her class that evening, and they in turn told Sweeney that she had to leave the premises. They say that Sweeney refused to go, and at that point there was probable cause to arrest her for trespass to state-supported land. Sweeney, however, testified that no one instructed her to leave the

4

building.  Pl.'s Ex. B at 122.

Given Sweeney's testimony that she was never told to leave the building, there is a genuine factual dispute about whether there was probable cause to arrest her for trespass.  A reasonable fact finder could believe Sweeney's statement that she was not asked to leave the building and thus could find probable cause lacking.  The same factual dispute precludes a determination that defendants had "arguable probable cause" to arrest Sweeney for trespass.

The Court next addresses the offense of resisting arrest.  Under Illinois law, "[a] person is not authorized to use force to resist an arrest which he knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if he believes that the arrest is unlawful and the arrest in fact is unlawful."  720 ILCS 5/7-7 (2012).  Here again, the parties have offered sharply conflicting testimony regarding what happened.  Defendants and at least one eyewitness say that Sweeney was screaming and flailing when defendants attempted to take her into custody.  Sweeney, however, paints a completely different picture.  She says that after an exchange where the defendants asked her for identification and she attempted to call her lawyer, "they just grabbed me," and

> they were both each holding an arm, and I was saying, "Help," and I screamed help down in my gut.  I was screaming help.  It was guttural.  It was with bass and it was just, "Help."  . . .  It was just like an animal.  And they were pulling and pulling, and she was hitting me and hitting me.  And then all of a sudden, it looked like he was stopping her.  Looked like he had taken her hand off of me, and I thought for a minute, oh, he's stopping, and then all of a sudden he put his hands both on my shoulders and just picked me up and slammed me into the concrete, and that was all I remember.  At that point I passed out.

Pl.'s Ex. B at 61, 63-64.

5

A reasonable jury would be entitled to believe Sweeney's account, and if so it properly could conclude that probable cause was lacking to arrest her for resisting. The same factual dispute precludes a finding of arguable probable cause with regard to resisting arrest.

Defendants also contend there was probable cause or arguable probable cause as to the offense of disorderly conduct. Under Illinois law, "a person commits disorderly conduct when he or she knowingly: (1) Does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace . . . ." 720 ILCS 5/26-1(a)(1) (2012). "Disorderly conduct is loosely defined. As a highly fact specific inquiry, it embraces a wide variety of conduct serving to destroy or menace the public order and tranquility. . . . The main purpose of the offense is to guard against an invasion of the right of others not to be molested or harassed, either mentally or physically, without justification." *People v. McLennon*, 2011 IL App (2d) 091299, ¶ 30, 957 N.E.2d 1241, 1249 (2011) (internal quotations omitted).

Defendants' argument on disorderly conduct is a bit scattered in their opening brief, but they describe it clearly in their reply. They say:

> Plaintiff had a verbal altercation with a student, Leniseal Wadley, including yelling in front of a crowded classroom. Plaintiff was flailing her body, and Professor Ruiz described the situation as disturbing the classroom instruction. Indeed, Professor Ruiz was so disturbed by Plaintiff's behavior that she asked a student to summon the police. When Defendant Harris arrived and told Plaintiff to be quiet, Plaintiff continued yelling. As she exited the classroom, Plaintiff threatened Wadley. Thus, Plaintiff's threats to another student and her loud conduct caused a disruption within the classroom. And Plaintiff states that she does not recall her interaction inside the classroom with Professor Ruiz; therefore, Defendants' version of what happened in the classroom is uncontroverted. These unrebutted facts are sufficient to find probable cause to arrest Plaintiff for the crime of disorderly conduct.

Defs.' Reply at 2 (citations omitted).

Defendants only arrived at the classroom after they were called, and thus to the extent they premise probable cause or arguable probable cause on what happened before they arrived, it would have to be based on what they were told. And on that point, the evidence is not "uncontroverted" as defendants claim. The professor testified only that she told the officers that there was "disruption in my classroom and at that point I wanted them to remove Miss Lisa." Pl.'s Ex. C at 42. She did not testify that the told the officers that Sweeney had made any threats, either physical or verbal.

Nor is it accurate to say, as defendants do, that their version of what happened after they arrived is uncontroverted. The professor testified that all that happened when the officers asked Sweeney to leave the classroom is that she said, initially, that she did not want to leave. According to the professor, the officers waited. She said that after a few minutes Sweeney got up voluntarily and left the classroom, "and that's it." *Id.* at 43-45. And contrary to defendants' argument, Sweeney did not have a failure of recollection regarding what happened after defendants came to the classroom. She testified that the officers asked her to step out. She asked the officers why she was the one leaving, "[i]t should be both of us," i.e., both her and the other student. Pl.'s Ex. B at 47. Sweeney said she asked if she could come back the next day, and the professor said yes. The professor told Sweeney that she wanted to separate her and the other student, because "I don't know what might happen later." *Id.* Sweeney went into the hallway, and Burras said to her that it would all "blow over." *Id.* at 46, 47. This, read fairly, is inconsistent with defendants' account that Harris asked Sweeney to quiet down but she continued to yell and that while leaving, Sweeney threatened the other student.

7

In sum, the facts underlying the claim of probable cause or arguable probable cause to arrest Sweeney for disorderly conduct are genuinely disputed. A reasonable fact finder could believe that the officers observed Sweeney engaging in disruptive behavior or were told she had done so, but the fact finder could also reasonably believe the opposite. This precludes entry of summary judgment.

It is no answer to this discussion to say that Sweeney's testimony cannot create a genuine factual dispute because it is self-serving. "Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving . . . . As we have repeatedly emphasized over the past decade, the term 'selfserving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013).

In their reply brief, defendants make an additional argument. They contend that Sweeney refused to show her identification when asked and that this violated the Illinois stop-and-identify statute, 725 ILCS 5/107-14, providing an independent ground for probable cause. *See* Defs.' Reply at 3. Defendants take Sweeney to task for not addressing this point in her response brief. *Id.* There is a good reason for that: defendants did not so much as hint at a reference to the stop-and-identify statute in their opening brief. Rather, they said this:

> Defendants had probable cause to arrest Sweeney for several criminal offenses: (1) trespass to state supported land for failure to leave the building upon notice from Defendants, coupled with her disturbance that prevented students and professors from focusing on their own classes; (2) resisting arrest; and (3) disturbing the peace.

Defs.' Opening Br. at 5-6   Because defendants raised the stop-and-identify argument

8

for the first time in their reply brief, they forfeited the point for summary judgment purposes. *See, e.g., Alam v. Miller Brewing Co.*, 709 F.3d 662, 668 n.3 (7th Cir. 2013); *United States v. Diaz*, 533 F.3d 574, 577 (7th Cir. 2008).

**2.  Failure to intervene**

In count 3, Sweeney alleges that each defendant is liable for failing to prevent the constitutional violations committed by the other.

> An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know:  (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (internal quotation marks omitted).  The Seventh Circuit has made clear that the prongs of this analysis almost always implicate questions of fact for the jury . . . ." *Id.*

Defendants contest both the occurrence of any constitutional violations the proposition that there was realistic opportunity to prevent them.  Given the existence genuine factual disputes regarding Sweeney's constitutional claims, defendants have not carried the day on the first of these points.  The Court likewise concludes that a reasonable jury could find against one or both of the defendants on the second point. The Seventh Circuit "has implied that a 'realistic opportunity to intervene' may exist whenever an officer could have 'called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop.'" *Abdullahi*, 423 F.3d at 774 (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)).  A jury that believed Sweeney's account of the events reasonably could find that either could have cautioned the other

9

to stop. Thus defendants are not entitled to summary judgment on plaintiff's failure to intervene claim.

**3.      Conspiracy**

In count 2 of her complaint, Sweeney alleges that defendants conspired to violate her constitutional rights. This requires her to establish that the defendants had an agreement or understanding that they would violate her constitutional rights. *See, e.g., Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). That said, "a conspiracy need not be based on an express agreement . . . its existence can be inferred from circumstantial evidence." *Richardson v. City of Indianapolis*, 658 F.2d 494, 500 (7th Cir. 1981). *Cf. Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 422 (7th Cir. 2000) (quoting a district judge's ruling that the fact that the defendants met after the incident in question to "discuss [its] circumstances" amounted to circumstantial evidence from which a jury reasonably could infer a conspiracy).

Sweeney relies on the following to support of her contention that defendants reached a common understanding to deprive her of her rights. First, Burras testified during her deposition that she knew that Harris was on his way to the classroom when she was making her own way there. Pl.'s Ex. I at 22. Second, Sweeney testified that after leaving the classroom, she walked downstairs and exited the building before returning upstairs to wait for a ride. Pl.'s Ex. B at 49. She argues that "[d]efendants would have had ample time to communicate with each other while Ms. Sweeney [sic] gone and, coincidentally, Defendants initiated their attack just after Ms. Sweeney returned." Pl.'s Br. at 8.

Defendants are entitled to summary judgment on this claim. Although a

conspiracy can be inferred from circumstantial evidence, Sweeney has offered only evidence of an *opportunity* to conspire. This is insufficient. *See Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013) ("The second defect is that . . . Cooney fails even to argue that Casady and Sosnowski actually communicated with Magnabosco. Rather, Cooney suggests that 'there is a possibility' that they *could* have contacted her.")

**4.      Malicious prosecution**

Sweeney asserts several claims under state law, including a claim for malicious prosecution. In Illinois, the elements of malicious prosecution are: 1) the commencement of criminal proceedings by defendants, 2) the termination of those proceedings in favor of plaintiff, 3) a lack of probable cause for the proceedings, 4) the presence of malice, and 5) resulting damages. *Williams*, 733 F.3d at 759.

Defendants contend that there was probable cause for the criminal charges against Sweeney; the criminal proceedings did not terminate in Sweeney's favor; and she suffered no damages as a result of the criminal charges, because she appeared in court only once.

Defendants' first point lacks merit. As the Court has discussed, there are genuine dispute of material fact regarding the existence of probable cause on the disorderly conduct and resisting arrest charges.

The second issue is whether a reasonable jury could find that the criminal proceedings against Sweeney were terminated in her favor. As indicated earlier, the charges against her were SOL'd. There is no Seventh Circuit authority concerning whether and under what circumstances an SOL can satisfy the favorable termination requirement, and district court decisions go both ways. Illinois has adopted the view of

the Restatement (2d) of Torts, which states that a "demurrer or its equivalent" may amount to an adjudication in the plaintiff's favor depending on the circumstances. *Cult Awareness Network v. Church of Scientology Int'l*, 177 Ill. 2d 267, 276, 685 N.E.2d 1347, 1352 (1997) (citing Restatement (2d) of Torts § 674 cmt. j (1977)). This is consistent with the Illinois Supreme Court's determination in *Swick v. Liautaud*, 169 Ill. 2d 504, 662 N.E.2d 1238 (1996), that

> a criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi*, unless the abandonment is for reasons not indicative of the innocence of the accused. The abandonment of the proceedings is not indicative of the innocence of the accused when the *nolle prosequi* is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial.

*Id.* at 513, 662 N.E.2d at 1243. The burden remains with the plaintiff, however, and "the circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Id.* at 513-14, 662 N.E.2d at 1243.

The evidence in this case reflects that Harris arrived late for the initial hearing in Sweeney's case, the prosecutor moved to SOL the case, and the court entered an order striking the charges with leave to reinstate. *See* Pl.'s Ex. N. The prosecutor presumably could have requested a continuance but did not do so, nor did the state ever ask to reinstate the case. In addition, there is no indication that Harris, Burras, or CSU sought reinstatement of the charges against Sweeney. Finally, because Sweeney's counsel made a demand for trial, the state's ability to reinstate the charges eventually expired.

12

The Court finds persuasive Judge Rebecca Pallmeyer's decision in *Montes v. DiSantis*, No. 04 C 4447, 2005 WL 1126556 (N.D. Ill. May 10, 2005), that an SOL in similar circumstances may amount to a favorable termination for purposes of a malicious prosecution claim. Judge Pallmeyer noted that in *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 820 N.E.2d 455 (2004), in discussing a claim of malicious prosecution regarding a criminal charge that had been SOL'd, the Illinois Supreme Court noted that "[n]o one disputes that the circuit court's decision to SOL the charges against [the plaintiff] represented a favorable outcome for him." *Id.* at 102, 820 N.E.2d at 460. Rather, the only question was whether the SOL amounted to a "termination" of the criminal case. *Id.* at 102, 820 N.E.2d at 461.

As Judge Pallmeyer noted in *Montes*, Illinois courts have concluded that terminations that do not amount to adjudications on the merits still may satisfy the favorable termination requirement for malicious prosecution, such as an involuntary dismissal resulting from a failure to comply with discovery or a legal disposition that permits an inference of the absence of probable cause. In *Velez v. Avis Rent A Car Sys., Inc.*, 308 Ill. App. 3d 923, 721 N.E.2d 652 (1999), the underlying criminal charge was SOL'd twice, and the speedy trial period and statute of limitations ultimately expired. The court upheld the denial of a motion to dismiss the ensuing malicious prosecution suit, noting that the prosecution had abandoned the criminal charge and that there was nothing to indicate that this was "the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to

trial." *Id.* at 929, 721 N.E.2d at 656. The same is true here. The Court concludes that a reasonable jury could find that Sweeney has satisfied this element of a malicious prosecution claim.

Finally, a reasonable jury could find that Sweeney has satisfied the damages element of malicious prosecution. In *Harmon v. Gordon*, 712 F.3d 1044 (7th Cir. 2013), the court stated that this element requires a plaintiff to have suffered "special injury" or "special damage beyond the usual expense, time, or annoyance in defending a lawsuit." *Id.* at 1056. Sweeney testified during her deposition that she continues to suffer mental and emotional distress relating to her ordeal, for which she has required medical treatment. *See* Pl.'s Ex. B at 88. Defendants overlook this presumably because they are drawing a distinction between the court proceedings and the underlying arrest and filing of charges that initiated those proceedings. But Illinois law does not acknowledge this difference. "In nearly all malicious prosecution cases in which Illinois courts have found a special injury, the nature of the underlying suit visited upon the plaintiff some quantifiable damage causing characteristic. . . . These injuries have generally resulted from an arrest or seizure . . . ." *Harmon*, 712 F.3d at 1056 (internal quotation marks omitted).

5.  **Sovereign immunity on state-law claims**

In addition to her malicious prosecution claim, Sweeney has sued defendants for IIED, battery, and assault under Illinois law. Defendants argue that sovereign immunity protects them from liability for all of plaintiff's state law claims.

Sovereign immunity bars claims against the state of Illinois. Determination of whether a claim against a state employee is considered a claim against the state "does

14

not depend simply on whether the employee was acting within the scope of his employment when he committed the act in question." *Fritz v. Johnston*, 209 Ill. 2d 302, 310, 807 N.E.2d 461, 466 (2004). Rather, it turns on the source of the duty the employee is claimed to have breached. Sovereign immunity applies "[w]here the duty is imposed solely by virtue of the individual's employment with the state." *Id.* at 310, 807 N.E.2d at 466-47.

Defendants argue that they acted exclusively pursuant their duties as police officers for a state university. They compare their conduct to defendants' actions in *Richman v. Sheahan*, 270 F.3d 430 (7th Cir. 2001). *Richman* involved claims against sheriff's deputies who took a witness into custody at the direction of a judge. The witness, who had a prior disability, died allegedly as the result of the force used during his seizure. The administrator of the witness's estate pursued state-law survival and wrongful death claims against the sheriff's deputies. The court found that the sheriff's deputies were acting on behalf of the state because the judge was an officer of the state. It concluded that the claims were barred by sovereign immunity because there was "nothing in the complaint that would indicate that the deputies' conduct was motivated by a purpose other than executing the judge's order." *Id.* at 442.

Defendants' argument confuses the issue of scope of employment with that of the duty that gives rise to the particular claim. As the court stated in *Fritz*, "the critical question is the source of the duty the employee is alleged to have violated—and specifically, whether that duty exists solely by virtue of the defendant's state employment." *Fritz*, 209 Ill. 2d at 314, 807 N.E.2d at 469. In contrast to *Richman*, in which the sheriff's deputies were carrying out a duty directed by a state officer, in this

case the duties in question are not duties that arise by virtue of the defendants' employment by the state. As the Illinois Supreme Court noted in *Fritz*, "the duty not to make false accusations of criminal conduct is imposed by the Illinois Criminal Code, which makes no distinction between accusations by state employees and those leveled by non-state employees." *Id.* The same is true of the duties at issue here.

Illinois law considers an action naming a state employee to be an action against the state itself if there are no allegations that the state employee acted beyond the scope of his authority through wrongful acts, the duty alleged to have been breached was not one owed to the public generally, independent of the fact of state employment, *and* the conduct involves actions ordinarily within the employee or agent's normal and official state functions. *Jinkins v. Lee*, 209 Ill. 2d 320, 330, 807 N.E.2d 411, 418 (2004). In this case, however, the defendants are alleged to have exceeded their authority by wrongful acts, and the duties they breached are duties that are not specific to their state employment. Thus the requirements for sovereign immunity are not met.

## Conclusion

For the foregoing reasons, the Court grants summary judgment for defendants on plaintiff's conspiracy claim (Count 2) but otherwise denies defendants' motion for summary judgment [docket no. 61].

                                                              MATTHEW F. KENNELLY
                                                              United States District Judge

Date: March 16, 2014